1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10  LIBER R. ANDRADE,                    ) 1:10-cv—1123-SMS-HC
                                        )
11              Petitioner,             ) ORDER GRANTING PETITIONER'S
                                        ) MOTION TO AMEND PETITION (DOC. 5)
12                                      )
13        v.                            ) ORDER DIRECTING THE CLERK TO
                                        ) CHANGE THE NAME OF THE RESPONDENT
    KATHLEEN ALLISON,                   ) TO KATHLEEN ALLISON
14                                      )
                Respondent.             ) ORDER DISCHARGING ORDER TO SHOW
15                                      ) CAUSE (DOC. 4)
   _____  )
16                                        ORDER DISMISSING THE PETITION
                                          WITHOUT LEAVE TO AMEND FOR
17                                        FAILURE TO STATE A COGNIZABLE
                                          CLAIM (DOC. 1)
18
                                          ORDER DECLINING TO ISSUE A
19                                        CERTIFICATE OF APPEALABILITY

20                                        ORDER DIRECTING THE CLERK TO
                                          CLOSE THE CASE
21

22       Petitioner is a state prisoner proceeding pro se with a

23  petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

24  Pursuant to 28 U.S.C. § 636(c)(1), Petitioner has consented to

25  the jurisdiction of the United States Magistrate Judge to conduct

26  all further proceedings in the case, including the entry of final

27  judgment, by manifesting consent in a signed writing filed by

28  Petitioner on July 1, 2010 (doc. 3).

Pending before the Court is the petition, which was filed on June 22, 2010, as well as Petitioner's motion to amend the petition to name a proper respondent, which was filed on February 18, 2011.

> I.   <u>Amendment of the Petition</u>

Pending before the Court is Petitioner's motion to amend the petition to name a proper respondent, which was filed in response to the Court's order of January 21, 2011, granting Petitioner leave to file the motion.

Petitioner requests that Kathleen Allison, the warden at Petitioner's institution of confinement, be named as Respondent in this matter.

A petitioner seeking habeas relief must name the state officer having custody of him or her as the respondent to the petition.  Rule 2(a) of the Rules Governing Section 2254 Cases; <u>Ortiz-Sandoval v. Gomez</u>, 81 F.3d 891, 894 (9th Cir. 1996); <u>Stanley v. California Supreme Court</u>, 21 F.3d 359, 360 (9th Cir. 1994).  Normally, the person having custody of the prisoner is the warden of the prison because the warden has "day to day control over" the prisoner.  <u>Brittingham v. United States</u>, 982. F.2d 378, 279 (9th Cir. 1992).  Therefore, Petitioner's request is proper.

Accordingly, Petitioner's motion for leave to amend the petition to name Kathleen Allison as Respondent in this matter will be granted, and the Clerk will be directed to change the name of the Respondent to Kathleen Allison.

> II.   <u>Discharge of the Order to Show Cause</u>

On January 21, 2011, the Court ordered Petitioner to show cause why the petition should not be dismissed for failure to

exhaust state court remedies.

In response to the Court's order, Petitioner filed a copy of the petition for writ of habeas corpus that he filed in the California Supreme Court.  (Doc. 6.)  The document reflects that the claims which Petitioner raises in the petition before the Court were presented to the California Supreme Court.

Accordingly, the order to show cause that issued on January 21, 2011, will be discharged.

III.   <u>Screening the Petition</u>

Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (Habeas Rules) requires the Court to make a preliminary review of each petition for writ of habeas corpus. The Court must summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court...." Habeas Rule 4; <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir. 1990); <u>see also</u> <u>Hendricks v. Vasquez</u>, 908 F.2d 490 (9th Cir. 1990).  Habeas Rule 2(c) requires that a petition 1) specify all grounds of relief available to the Petitioner; 2) state the facts supporting each ground; and 3) state the relief requested. Notice pleading is not sufficient; rather, the petition must state facts that point to a real possibility of constitutional error.  Rule 4, Advisory Committee Notes, 1976 Adoption; <u>O'Bremski v. Maass</u>, 915 F.2d at 420 (quoting <u>Blackledge v. Allison</u>, 431 U.S. 63, 75 n. 7 (1977)).  Allegations in a petition that are vague, conclusory, or palpably incredible are subject to summary dismissal.  <u>Hendricks v. Vasquez</u>, 908 F.2d 490, 491 (9th Cir. 1990).

1    Further, the Court may dismiss a petition for writ of habeas

2 corpus either on its own motion under Habeas Rule 4, pursuant to

3 the respondent's motion to dismiss, or after an answer to the

4 petition has been filed.  Advisory Committee Notes to Habeas Rule

5 8, 1976 Adoption; see, Herbst v. Cook, 260 F.3d 1039, 1042-43

6 (9th Cir. 2001).

7    IV.  Background

8    Petitioner alleged in the petition that he was an inmate of

9 the California Substance Abuse Treatment Facility (CSATF) at

10 Corcoran, California, serving a sentence of fifteen (15) years to

11 life plus two (2) years imposed by the Contra Costa County

12 Superior Court upon Petitioner's conviction in January 1982 of

13 second degree murder and assault with a deadly weapon in

14 violation of Cal. Pen. Code §§ 187, 245, and 12022.5.  (Pet. 1.)

15 Petitioner challenges the decision of California's Board of

16 Parole Hearings (BPH) finding Petitioner unsuitable for parole

17 made after a hearing held on May 23, 2007, and state court

18 decisions denying habeas corpus relief with respect to the BPH's

19 decision.  (Pet. 4, 133-43.)

20    Petitioner raises the following claims: 1) the BPH's

21 decision violated Petitioner's right to due process of law under

22 the state and federal constitutions because the decision lacked

23 the support of some evidence that Petitioner was currently a

24 threat to society; 2) the decision violated Petitioner's right to

25 due process of law because Petitioner's right to a neutral

26 hearing body was infringed by the presence on the BPH of law

27 enforcement officers, who Petitioner alleges are normally biased

28 by their training; 3) the BPH's decision violated Petitioner's

4

right to due process of law because Petitioner had a right to a jury trial concerning factors inherent to the death penalty statutes; and 4) Petitioner has a protected liberty interest in parole based on the mandatory language of California's parole statutes.  (Pet. 4-5.)

Petitioner submitted the transcript of the parole hearing held on May 22, 2007.  (Pet. 18-105).  Review of the transcript reveals that Petitioner attended the hearing (pet. 18, 20), acknowledged his right to review his central file and to present documents (pet. 26), addressed the board concerning numerous factors of parole suitability (pet. 32-78), and made a personal statement in favor of parole (pet. 99-100).  An attorney appeared with Petitioner, advocated on his behalf, and made a closing statement in favor of parole.  (Pet. 18, 24, 26, 28-29, 31, 84-87, 92-99.)

Petitioner was also present when the BPH stated its reasons for finding Petitioner unsuitable for parole, which included the nature of the commitment offense, multiple innocent victims, Petitioner's focus on the effect the crime had on him instead of the effect it had on the victims, and the district attorney's opposition to release.  (Pet. 101-05.)

V.   Failure to State a Cognizable Due Process Claim
     concerning the Absence of Some Evidence to Support
     the Board's Finding of Danger

Petitioner complains that the denial of parole violated Petitioner's right to due process of law under the state and federal constitutions because the decision lacked the support of some evidence that Petitioner was currently a threat to society. Petitioner contends that the BPH's reliance on the commitment

offense as a basis for denial of parole was flawed. (Pet. 4, 7-9).

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding. Lindh v. Murphy, 521 U.S. 320, 327 (1997), cert. denied, 522 U.S. 1008 (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. –, -, 131 S.Ct. 13, 16 (2010) (per curiam).

The Supreme Court has characterized as reasonable the decision of the Court of Appeals for the Ninth Circuit that California law creates a liberty interest in parole protected by the Fourteenth Amendment Due Process Clause, which in turn requires fair procedures with respect to the liberty interest. Swarthout v. Cooke, 562 U.S. –, 131 S.Ct. 859, 861-62 (2011).

However, the procedures required for a parole determination are the minimal requirements set forth in Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 12 (1979).[1]

---

[1] In Greenholtz, the Court held that a formal hearing is not required with respect to a decision concerning granting or denying discretionary parole; it is sufficient to permit the inmate to have an opportunity to be heard and to be given a statement of reasons for the decision made. Id. at 16. The decision maker is not required to state the evidence relied upon in coming to the decision. Id. at 15-16. The Court reasoned that because there is no constitutional or inherent right of a convicted person to be released conditionally before expiration of a valid sentence, the liberty interest in discretionary parole is only conditional and thus differs from the liberty

<u>Swarthout v. Cooke</u>, 131 S.Ct. 859, 862.  In <u>Swarthout</u>, the Court

rejected inmates' claims that they were denied a liberty interest

because there was an absence of "some evidence" to support the

decision to deny parole.  The Court stated:

> There is no right under the Federal Constitution
> to be conditionally released before the expiration of
> a valid sentence, and the States are under no duty
> to offer parole to their prisoners.  (Citation omitted.)
> When, however, a State creates a liberty interest,
> the Due Process Clause requires fair procedures for its
> vindication–and federal courts will review the
> application of those constitutionally required procedures.
> In the context of parole, we have held that the procedures
> required are minimal.  In <u>Greenholtz</u>, we found
> that a prisoner subject to a parole statute similar
> to California's received adequate process when he
> was allowed an opportunity to be heard and was provided
> a statement of the reasons why parole was denied.
> (Citation omitted.)

<u>Swarthout</u>, 131 S.Ct. 859, 862.  The Court concluded that the

petitioners had received the process that was due as follows:

> They were allowed to speak at their parole hearings
> and to contest the evidence against them, were afforded
> access to their records in advance, and were notified
> as to the reasons why parole was denied....
>
> That should have been the beginning and the end of
> the federal habeas courts' inquiry into whether
> [the petitioners] received due process.

<u>Swarthout</u>, 131 S.Ct. at 862.  The Court in <u>Swarthout</u> expressly

noted that California's "some evidence" rule is not a substantive

federal requirement, and correct application of California's

"some evidence" standard is not required by the Federal Due

---

interest of a parolee.  <u>Id.</u> at 9.  Further, the discretionary decision to
release one on parole does not involve restrospective factual determinations,
as in disciplinary proceedings in prison; instead, it is generally more
discretionary and predictive, and thus procedures designed to elicit specific
facts are unnecessary.  <u>Id.</u> at 13.  In <u>Greenholtz</u>, the Court held that due
process was satisfied where the inmate received a statement of reasons for the
decision and had an effective opportunity to insure that the records being
considered were his records, and to present any special considerations
demonstrating why he was an appropriate candidate for parole.  <u>Id.</u> at 15.

Process Clause.  Id. at 862-63.

Here, Petitioner asks this Court to engage in the very type of analysis foreclosed by Swarthout.  Petitioner does not state facts that point to a real possibility of constitutional error or that otherwise would entitle Petitioner to habeas relief because California's "some evidence" requirement is not a substantive federal requirement.  Review of the record for "some evidence" to support the denial of parole is not within the scope of this Court's habeas review under 28 U.S.C. § 2254.

Petitioner cites state law concerning grants of parole and the appropriate weight to be given to evidence relevant to determining suitability for parole.  Petitioner also refers to the state constitution.

To the extent that Petitioner's claim or claims rest on state law, they are not cognizable on federal habeas corpus. Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation.  Wilson v. Corcoran, 562 U.S. — , 131 S.Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Alleged errors in the application of state law are not cognizable in federal habeas corpus.  Souch v. Schiavo, 289 F.3d 616, 623 (9th Cir. 2002).

A petition for habeas corpus should not be dismissed without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted.  Jarvis v. Nelson, 440 F.2d 13, 14 (9th Cir. 1971).

Here, it is clear from the allegations in the petition and the attached documentation that Petitioner attended the parole

suitability hearing, made statements to the BPH, and received a statement of reasons for the decision of the BPH.  Thus, Petitioner's own allegations and exhibits establish that he had an opportunity to be heard and received a statement of reasons for the decision.  Petitioner received all process that was due. It therefore does not appear that Petitioner could state a tenable due process claim.

Accordingly, insofar as Petitioner alleges a violation of due process because of a lack of some evidence to support the decision, the petition will be dismissed without leave to amend.

VI.   Impartial Tribunal

Petitioner argues that his right to due process was violated because the commissioners on the BPH were law enforcement officers who were naturally predisposed to subtle bias and even prejudice.  Petitioner refers to Cal. Pen. Code § 5075 as setting criteria for the composition of the board to guarantee that parole proceedings are fair and impartial.

A.   Background

Petitioner alleges, and the transcript of the parole hearing confirms, that Presiding Commissioner Davis was a police officer for thirty (30) years; Deputy Commissioner Armenta was a city manager and a chief probation officer, and he described the latter position as one involving the rehabilitation of criminals. (Pet. 4, 9-10, 26-27.)

Petitioner submitted with the petition a copy of the declaration of a former commissioner and chairperson of the board explaining the emergence and implementation of a "no parole policy" in California which included selection of members to the

board who were less likely to grant parole and willing to
disregard their statutory duty, and agreement among panel members
upon an outcome in advance of the hearings.  (Pet. 10, 123-27.)
Petitioner also submitted a letter concerning BPH practices from
ex-Commissioner Bilenda Harris-Ritter that Petitioner indicates
was forwarded to the Legislature.  (Pet. 128.)  Petitioner cites
California cases in which, Petitioner asserts, the courts
recognized the existence of a no-parole policy.  (Pet. 11.)

In the instant case, at the beginning of the hearing,
Petitioner and his counsel were asked by Presiding Commissioner
Davis if there was any reason to believe that the board would not
be impartial.  (Pet. 26.)  In response, Petitioner questioned the
commissioners concerning their employment history.  (Pet. 27.)
Petitioner said that after thirty (30) years of dealing with
manipulating and lying people, one's good faith could be
questioned.  (Pet. 27.)  Petitioner's counsel asked Presiding
Commissioner Davis if listening to people who often lied to him
had hardened him, and Davis responded that he had learned that
there were many different reasons for people's entry into the
legal system, and he was capable of listening to Petitioner and
making a fair decision.  (Id. at 28.)  Commissioner Armenta
stated that a departmental survey of the deputy commissioners
showed that for one year, Armenta granted parole the most;
Armenta stated that he was more than fair.  (Id. at 28-29.)
Petitioner's counsel then stated the following:

> ATTORNEY JUDD: And on a personal note, you were I
> believe the Chief of Police of El Cajon at one
> time so you dealt with administrative and probably
> disciplined some police officers; it wasn't as though
> you believe every police report that you see is 100

```
                percent accurate in your administration as well.  I
                have full faith and confidence in both of you to
                separate yourselves form any of that past and look
                at my client as the individual that he is.
```

(Pet. 29:2-10.)  Davis then asked if there were any other

questions; Petitioner stated that the question and concern were

his.  (Pet. 29:14-15.)  There was no other discussion of the

matter.[2]

Petitioner submitted the declaration of Albert M. Leddy,

which is dated March 1999.  (Pet. 123-27.)  In the declaration,

Leddy, who had been a district attorney, detailed his nine years

of service as board chairman and commissioner between 1983 and

1992.  He described what he perceived as a growing reluctance of

board panels to grant parole between 1983 and 1990 because of

increasing political pressure, new board appointees who

disfavored paroling life prisoners, use of Pen. Code § 3041.2 to

overturn decisions granting parole, and application of a state

regulation to rescind previous grants of parole.  Leddy had no

actual knowledge of how Governor Wilson allegedly made his "no-

parole" policy known, but Leddy observed Governor Wilson's

selective appointment of commissioners who were crime victims,

former law enforcement personnel, or Republican legislators who

had been defeated in elections and needed a job. (Pet. 123.)

Leddy stated that Governor Wilson's appointments of unqualified

persons violated Cal. Pen. Code § 5075, which required

---

[2] The Court notes that it is possible that by stating that the
commissioners were fair, Petitioner's counsel waived any claim concerning
alleged bias of the BPH.  However, the Court lacks evidence concerning
Petitioner's understanding and knowledge at the time of the hearing.  Thus, in
an abundance of caution, the Court will proceed to analyze Petitioner's
allegations and documentation concerning his bias claim.

appointment of persons who reflected as nearly as possible a
cross-section of the racial, sexual, economic, and geographical
features of the population of the state.  (Pet. 124.)  Leddy
alleged that one board chairman told two commissioners to stop
giving parole dates, and an executive officer of the board had
told Leddy to recommend rescission of parole in a case in which
Leddy had refused to do so; Leddy was told to recommend
rescission when it was the governor's desire.  (Pet. 124.)  Leddy
detailed the resistance he encountered when he attempted to bring
up at a board meeting what he perceived as the board's non-
compliance with state law.  (Pet. 124.)  Leddy concluded that the
result had been the removal of any reasonable possibility of
parole for practically of California's prisoners serving terms of
life with the possibility of parole, and violation of state
statutes which required that parole dates would normally be set.
(Pet. 125.)  Leddy detailed two instances in which he had
concluded that commissioners had decided the suitability issue
before the pertinent suitability hearing began.  (Pet. 126.)
Leddy stated on information and belief that Governor Davis had
stated that no parole would be granted on his watch.  (Pet. 126-
27.)

        The letter of Bilenda Harris-Ritter, an attorney who was
appointed by Governor Schwarzenegger and served as a commissioner
from July 2006 through January 2007, was dated June 5, 2007, and
addressed to whom it might concern.  Harris-Ritter described
having received a telephone call from a deputy appointment
secretary who told her to resign from the BPH or face
termination.  She described the reorganization of the board in

July 2005, which placed the board within the California Department of Corrections and Rehabilitation, and created an executive officer of the board who was appointed and controlled by the governor.  Harris-Ritter described pressure to hold hearings when inmates were sick or unprepared without being at fault.  (Pet. 128-32.)

B.  Analysis

A fair trial in a fair tribunal is a basic requirement of due process.  In re Murchison, 349 U.S. 133, 136 (1955). Fairness requires an absence of actual bias and of the probability of unfairness.  Id. at 136.  Bias may be actual, or it may consist of the appearance of partiality in the absence of actual bias.  Stivers v. Pierce, 71 F.3d 732, 741 (9th Cir. 1995).  A showing that the adjudicator has prejudged, or reasonably appears to have prejudged, an issue is sufficient. Kenneally v. Lungren, 967 F.2d 329, 333 (9th Cir. 1992).  There is a presumption of honesty and integrity on the part of decision makers.  Withrow v. Larkin, 421 U.S. 35, 46-47 (1975).

California inmates have a due process right to parole consideration by neutral, unbiased, disinterested decision makers.  O'Bremski v. Maass, 915 F.2d 418, 422 (9th Cir. 1990). Because parole board officials perform tasks that are functionally comparable to those performed by the judiciary, they owe the same duty owed by the judiciary to render impartial decisions in cases and controversies that excite strong feeling because the litigant's liberty is at stake.  O'Bremski v. Maass, 915 F.2d 418, 422 (9th Cir. 1990).

However, the mere fact that a board denies relief in a given

13

case or has denied relief in the vast majority of cases does not demonstrate bias.  This is because unfavorable judicial rulings alone are generally insufficient to demonstrate bias unless they reflect such extreme favoritism or antagonism that the exercise of fair judgment is precluded.  <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994).

Here, the materials submitted by Petitioner do not reflect facts which would entitle Petitioner to relief.

As the commissioner himself pointed out, Commissioner Armenta's position as a probation officer involved not only law enforcement, but also rehabilitation of prisoners.  The mere fact that both commissioners had some history of employment as law enforcement officers does not demonstrate any direct interest in the outcome of the proceedings.  In the analogous situation of alleged implied bias on the part of trial jurors, it is established that the mere fact of present or former employment in law enforcement or government is generally not sufficient to raise a presumption of bias.  <u>Tinsley v. Borg</u>, 895 F.2d 520, 529 (9th Cir. 1990); <u>United States v. Le Pera</u>, 443 F.2d 810, 812 (9th Cir. 1971).  Further, the commissioners were questioned, and each expressly confirmed that they believed they could fairly consider Petitioner's case.

The letter of Harris-Ritter is an unsworn document which does not provide any specific information tending to show that the board as constituted at the time of Petitioner's hearing was actually biased, or that the commissioners at the parole hearing were actually biased.  Likewise, it does not present any basis for a finding of an appearance of unfairness on the part of the

board or the specific commissioners who were at Petitioner's hearing.

The declaration of Reddy was dated twelve years ago and generally relates to facts and circumstances that existed only until 1992.  Thus, the matters set forth in the declaration are so distant in time from Petitioner's parole hearing in 2007 that they fail to support a conclusion that political pressure to deny parole, and a so-called "no parole" policy, existed fifteen or more years later.  It has been accepted that under Governors Wilson and Davis, California had a sub rosa policy of finding all murderers unsuitable for parole.  See, Martin v. Marshall, 431 F.Supp.2d 1038, 1048 (N.D.Cal. 2006).  However, because Governor Davis was no longer the governor, evidence of this historical practice has been acknowledged as insufficient to show the existence of such a policy or practice with respect to subsequent parole hearings that took place as early as 2005.  See, Rosales v. California Bd. of Parole Hearings, 2011 WL 1134713, *5 (No. 2:07-CV-168-RHW-JPH, E.D.Cal., March 28, 2011).

The transcript reflects that in the course of the hearing, the commissioners considered numerous suitability factors, examined Petitioner, and heard and considered not only a prosecutor's statement, but also the statements of Petitioner and his counsel.  Petitioner was not denied an opportunity to bring any evidence before the board.  (Pet. 87.)  The record demonstrates that the board stated reasons that were grounded in the facts and circumstances of Petitioner's commitment offense and personal history.  No favoritism or antagonism is shown in the instant case.  Indeed, Petitioner's own counsel expressed

confidence in the impartiality of the board.  The record of the
hearing does not present any basis for a finding of bias.

The Court concludes that Petitioner's allegations and the
documentation attached to the petition do not reflect specific
facts that demonstrate bias.  Petitioner has not stated or
documented facts that would entitle him to relief in this
proceeding.

Because the full record of the parole proceedings is before
this Court, it does not appear possible that Petitioner could
allege a tenable due process claim based on alleged bias of the
BPH.

Accordingly, insofar as Petitioner claims a denial of due
process based on the alleged bias of the BPH, the petition will
be dismissed without leave to amend.

VII.  <u>Right to Trial by Jury</u>

Petitioner argues that because he was acquitted of first
degree murder and special circumstances, reliance on the
particular brutality and callousness of the commitment offense
increased his punishment and in effect usurped the province of
the jury to determine factual issues relating to circumstances
and conduct underlying a prior conviction.  Petitioner relies on
<u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).  (Pet. 12-13.)

Petitioner also argues that increasing his sentence is
disproportional and disrupts the statutory gradation of the
severity of homicide offenses and punishment; Petitioner has been
imprisoned for thirty (30) years for second degree murder,
whereas some first degree murderers are being released on parole
after serving only twenty-three (23) years.  Petitioner later

cites to <u>Yick Wo v. Hopkins</u>, 118 U.S. 356 (1886) and argues that
in light of the time he has already served, he has exceeded all
applicable "first degree matrices," and he is suffering
unconstitutional inequality.  (Pet. 15.)  Petitioner concludes
that because his offense was only second degree murder, and thus
because jurors never found his offense to be particularly brutal
or callous, "ONCE SUFFICIENT TIME HAS ELAPSED, A PAROLE RELEASE
DATE IS CONSTITUTIONALLY COMPELLED," and it is a violation of due
process to prolong Petitioner's term based on factors never found
to be true by a jury.  (Pet. 13-14.)

A.   <u>Apprendi</u>

In <u>Apprendi</u>, the Court held that any fact other than a prior
conviction that is necessary to support a sentence exceeding the
maximum authorized by the facts established by a plea of guilty
or a jury verdict must be admitted by a defendant or proved to a
jury beyond a reasonable doubt.  <u>Apprendi v. New Jersey</u>, 530 U.S.
466, 490; <u>United States v. Booker</u>, 543 U.S. 220, 244 (2005).  In
<u>Blakely v. Washington</u>, 542 U.S. 296, 303 (2004), the Court held
that the "statutory maximum for <u>Apprendi</u> purposes is the maximum
sentence a judge may impose solely on the basis of the facts
reflected in the jury verdict or admitted by the defendant."
<u>Blakely</u>, 542 U.S. at 303.  In California, an indeterminate
sentence of fifteen years to life is in legal effect a sentence
for the maximum term of life, subject only to the power of the
parole authority to set a lesser term.  <u>People v. Dyer</u>, 269
Cal.App.2d 209, 214 (1969).

Here, in denying parole, the BPH did not increase
Petitioner's sentence beyond the statutory maximum of life

imprisonment for second degree murder. <u>See</u>, Cal. Pen. Code § 190(a).  Accordingly, Petitioner has not stated facts concerning an <u>Apprendi</u> claim that would entitle him to relief.

Further, the Court is mindful of the discretionary and predictive evaluations made by the BPH in considering release of an inmate on parole. <u>See</u>, <u>Greenholtz v. Inmates of Nebraska Penal and Corr. Complex</u>, 442 U.S. 1, 9-10 (1979).  The Court is not aware of any Supreme Court authority applying the principles of <u>Apprendi</u> to parole proceedings.  The Court notes that Petitioner was not entitled to a jury trial or proof beyond a reasonable doubt in his parole proceedings.  <u>United States v. Knights</u>, 534 U.S. 112, 120 (2001) (no right to jury trial or proof beyond a reasonable doubt in proceedings to revoke probation); <u>United States v. Huerta-Pimentel</u>, 445 F.3d 1220, 1225 (9th Cir. 2006) (a judge's finding by a preponderance of the evidence that a defendant violated the conditions of supervised release does not raise a concern regarding the Sixth Amendment); <u>see</u>, <u>Swarthout v. Cooke</u>, 131 S.Ct. at 862.  Instead, Petitioner was entitled to the relatively minimal processes of <u>Greenholtz</u>. Thus, it would not appear that <u>Apprendi</u>, which concerns a right to jury trial and proof beyond a reasonable doubt to a jury, would be applicable to parole proceedings.

The Court concludes that Petitioner did not allege facts showing a denial of his right to due process of law by the absence of a jury trial.

B.   <u>Disproportionality under the Eighth and Fourteenth Amendments</u>

In alleging that his sentence is disproportionate,

Petitioner may be attempting to state a claim under the Eighth and Fourteenth Amendments concerning cruel and unusual punishment.

It is established that there is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the states are under no duty to offer parole to their prisoners. <u>Swarthout v. Cooke</u>, 562 U.S. -, 131 S.Ct. 859, 862 (2011). A criminal sentence that is "grossly disproportionate" to the crime for which a defendant is convicted may violate the Eighth Amendment. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 72 (2003); <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring); <u>Rummel v. Estelle</u>, 445 U.S. 263, 271 (1980). Outside of the capital punishment context, the Eighth Amendment prohibits only sentences that are extreme and grossly disproportionate to the crime. <u>United States v. Bland</u>, 961 F.2d 123, 129 (9th Cir. 1992) (quoting <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1001, (1991) (Kennedy, J., concurring)). Such instances are "exceedingly rare" and occur in only "extreme" cases. <u>Lockyer v. Andrade</u>, 538 U.S. at 72-73; <u>Rummel</u>, 445 U.S. at 272. So long as a sentence does not exceed statutory maximums, it will not be considered cruel and unusual punishment under the Eighth Amendment. See <u>United States v. Mejia-Mesa</u>, 153 F.3d 925, 930 (9th Cir.1998); <u>United States v. McDougherty</u>, 920 F.2d 569, 576 (9th Cir. 1990).

Here, Petitioner's sentence does not exceed the statutory maximum. Petitioner has not alleged facts pointing to a real possibility of a violation of the Eighth and Fourteenth Amendments.

1          C.   Equal Protection

2      In an abundance of caution, the Court considers whether

3  Petitioner may be attempting to allege that because some persons

4  convicted of homicide have been or will be released after serving

5  less time than Petitioner, Petitioner was denied the equal

6  protection of the laws.

7       Prisoners are protected under the Equal Protection Clause

8  of the Fourteenth Amendment from invidious discrimination based

9  on race, religion, or membership in a protected class subject to

10  restrictions and limitations necessitated by legitimate

11  penological interests.   Wolff v. McDonnell, 418 U.S. 539, 556

12  (1974); Bell v. Wolfish, 441 U.S. 520, 545-46 (1979).   The Equal

13  Protection Clause essentially directs that all persons similarly

14  situated should be treated alike.   City of Cleburne, Texas v.

15  Cleburne Living Center, 473 U.S. 432, 439 (1985).   Violations of

16  equal protection are shown when a respondent intentionally

17  discriminated against a petitioner based on membership in a

18  protected class, Lee v. City of Los Angeles, 250 F.3d 668, 686

19  (9th Cir. 2001), or when a respondent intentionally treated a

20  member of an identifiable class differently from other similarly

21  situated individuals without a rational basis, or a rational

22  relationship to a legitimate state purpose, for the difference in

23  treatment, Village of Willowbrook v. Olech, 528 U.S. 562, 564

24  (2000).

25      Here, Petitioner has not alleged that he is a member of a

26  protected class or that membership in a protected class was the

27  basis of any alleged discrimination.

28      Further, Petitioner has not shown that with respect to the

20

factors of parole suitability, he is similarly situated with
others who may have served less time after conviction of second
degree murder or first degree murder.

Finally, under California law, a prisoner's suitability for
parole is dependent upon the effect of the prisoner's release on
the public safety. Cal. Pen. Code § 3041(b) (mandating release
on parole unless the public safety requires a more lengthy period
of incarceration). California's parole system is thus both
intended and applied to promote the legitimate state interest of
public safety. See, Webber v. Crabtree, 158 F.3d 460, 461 (9th
Cir. 1998) (health and safety are legitimate state interests).
Petitioner has not shown or even suggested how the decision in
the present case could have constituted a violation of equal
protection of the laws.

Therefore, Petitioner has not stated specific facts showing
an equal protection violation.

With respect to the propriety of amending the petition to
state such a claim, the Court's statement in Greenholtz
concerning the difference between discretionary decisions
concerning parole release and those resulting in revocation of
parole is instructive:

> A second important difference between discretionary
> parole release from confinement and termination of
> parole lies in the nature of the decision that must be
> made in each case. As we recognized in Morrissey, the
> parole-revocation determination actually requires two
> decisions: whether the parolee in fact acted in
> violation of one or more conditions of parole and
> whether the parolee should be recommitted either for
> his or society's benefit. Id., at 479-480, 92 S.Ct. at
> 2599. "The first step in a revocation decision thus
> involves a wholly retrospective factual question." Id.,
> at 479, 92 S.Ct. at 2599.

21

The parole-release decision, however, is more subtle and depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release. Unlike the revocation decision, there is no set of facts which, if shown, mandate a decision favorable to the individual. The parole determination, like a prisoner-transfer decision, may be made "for a variety of reasons and often involve[s] no more than informed predictions as to what would best serve [correctional purposes] or the safety and welfare of the inmate." <u>Meachum v. Fano</u>, 427 U.S., at 225, 96 S.Ct., at 2538.  The decision turns on a "discretionary assessment of a multiplicity of imponderables, entailing primarily what a man is and what he may become rather than simply what he has done." Kadish, The Advocate and the Expert-Counsel in the Peno-Correctional Process, 45 Minn.L.Rev. 803, 813 (1961).

<u>Greenholtz v. Inmates of Nebraska Penal and Correctional Complex</u>, 442 U.S. 1, 9-10 (1979).  Because parole release determinations are discretionary and are not subject to evaluation based on any particular combination of factors of parole suitability, the fact that Petitioner might posit some similarity with other inmates with respect to offenses, history, or other parole suitability factors would not be sufficient to entitle Petitioner to relief based on the Equal Protection Clause.

Accordingly, it would not appear that Petitioner could state a tenable equal protection claim if he were granted leave to amend.

D.  <u>State Law</u>

As detailed above, to the extent that Petitioner is complaining of violations of state law, Petitioner does not state a claim that would entitle him to relief in a proceeding pursuant to 28 U.S.C. § 2254.

In summary, Petitioner has failed to state specific facts

that would entitle him to relief for a violation of his right to
jury trial, due process of law, equal protection of the laws, or
cruel and unusual punishment.  Because the legal principles
relied on by Petitioner do not apply to Petitioner's
circumstances, it does not appear that Petitioner could state a
tenable claim if leave to amend were granted.

Accordingly, insofar as Petitioner claims a denial of the
right to trial by jury, right to equal protection of the laws,
protection against cruel and unusual punishment, or rights
protected by state law based on the length of his sentence or the
BPH's consideration of the facts and circumstances of
Petitioner's offense, the petition will be dismissed without
leave to amend.

VIII.   Liberty Interest in Parole

Petitioner argues that pursuant to decisions of the Ninth
Circuit Court of Appeals, the mandatory language of Cal. Pen.
Code § 3041 creates a liberty interest in parole and a
presumption that parole release will be granted absent specific
findings.  (Pet. 5, 14-15.)

As previously noted, although there is a state-created
liberty interest in parole, that interest is protected by giving
the prisoner an opportunity to be heard and a statement of
reasons for a decision denying parole.  Thus, the presence of a
state-created interest does not itself entitle Petitioner to any
relief.  The sufficiency of the process received by Petitioner
has been previously analyzed above.

IX.   Certificate of Appealability

Unless a circuit justice or judge issues a certificate of

23

appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right.  § 2253(c)(2).  Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  Miller-El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in any procedural ruling.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

        In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong.  Id.  It is necessary for an applicant to show more than an absence of frivolity or the existence of mere good faith; however, it is not necessary for an applicant to show that the appeal will succeed.  Miller-El v. Cockrell, 537 U.S. at 338.

        A district court must issue or deny a certificate of appealability when it enters a final order adverse to the

24

applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, the Court will decline to issue a certificate of appealability.

X.  Disposition

Accordingly, it is ORDERED that:

1)  The Petitioner's motion for leave to amend the petition to name Kathleen Allison as Respondent in this matter is GRANTED; and

2)  The Clerk of Court is DIRECTED to change the name of the Respondent to Kathleen Allison; and

3)  The order to show cause that issued on January 21, 2011, is DISCHARGED; and

4)  The petition is DISMISSED without leave to amend for failure to state facts entitling the Petitioner to relief in a proceeding pursuant to 28 U.S.C. § 2254; and

5)  The Court DECLINES to issue a certificate of appealability; and

6)  The Clerk is DIRECTED to close the case because this order terminates the action in its entirety.


IT IS SO ORDERED.

**Dated:    May 12, 2011** _____
_____**/s/ Sandra M. Snyder**_____
                          UNITED STATES MAGISTRATE JUDGE